UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| DEBRA L. HAWKES,<br><br>    Plaintiff,<br><br>    v.<br><br>JO ANNE B. BARNHART, Commissioner of Social Security Administration,<br><br>    Defendant. | Case No. C05-1242-RSL-JPD<br><br>REPORT AND RECOMMENDATION |

## I. INTRODUCTION AND SUMMARY CONCLUSION

Plaintiff Debra L. Hawkes appeals the final decision of the Commissioner of the Social Security Administration ("Commissioner") that denied her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act after a hearing before an administrative law judge ("ALJ"). For the reasons set forth below, the Court recommends that the decision to award benefits beginning on March 12, 2003, be affirmed, but that the case be reversed and remanded for further administrative proceedings to determine whether additional benefits should be awarded from December 1, 1997 (plaintiff's alleged onset date), to March 11, 2003.

## II. FACTS AND PROCEDURAL HISTORY

Plaintiff is a fifty-three-year-old mother of two adult children. AR 264, 424. She has a high school education and vocational training as a nurse's aide. AR 278. Her work history

REPORT AND RECOMMENDATION
PAGE -1

01  includes experience as a nursing assistant, bartender, waitress, housekeeper, and restorative

02  aide. AR 295. She has suffered from various forms of mental illness, including depression,

03  throughout her life. AR 1029.

04  On September 14, 1995, plaintiff filed applications for SSI and DIB. AR 77-79, 105A-

05  D. She alleged disability beginning on April 15, 1995, as a result of depression, stress,

06  episodic joint pain, episodic irregular heartbeat, and periodic insomnia. AR 115. These

07  applications were denied both initially and upon reconsideration. AR 82-86, 103-05, 105E-H.

08  Because she began working after her alleged onset, plaintiff requested an administrative

09  hearing to determine her eligibility for a closed period of benefits. AR 106, 210. On May 21,

10  1997, an ALJ issued a decision finding plaintiff not disabled because her alleged impairments

11  were not severe and did not last for at least twelve months. AR 207-17. The Appeals Council

12  denied plaintiff's request for review. AR 226-28. Plaintiff did not file a civil action

13  challenging that decision and has not sought to reopen the case. Dkt. No. 23 at 2.

14  Plaintiff filed a second set of applications for SSI and DIB with a protective filing date

15  of February 20, 2001. AR 263-66, 639-42. This time, plaintiff alleged disability beginning

16  December 1, 1997, as a result of depression, anxiety, possible diabetes, "very high"

17  cholesterol, joint pain, and asthma. AR 272. These applications were also denied both initially

18  and upon reconsideration. AR 231-38, 646-49.

19  Plaintiff requested an administrative hearing and on March 28, 2003, an ALJ issued a

20  decision finding plaintiff not disabled. AR 19-35, 36-76, 239-40. The ALJ found that

21  plaintiff's ischemic heart disease and anxiety disorder were severe impairments, but that her

22  mental impairments were not. AR 30, 34. He found her not to be credible, and then

23  determined that her residual functional capacity did not preclude her from performing a

24  significant number of jobs in the national economy, including work as a housekeeper, garment

25  sorter, mail clerk, and small parts assembler. AR 30, 34. The Appeals Council denied her

26  request for review. AR 9-11, 14.

Plaintiff filed a civil action in this district challenging the ALJ's March 28, 2003, decision. Case No. C03-2619-FDB. On June 18, 2004, the Court adopted a magistrate judge's report and recommendation and remanded the case for further administrative proceedings. AR 699-704. Specifically, the Court found that the ALJ had erred by finding plaintiff's depression not to be a severe impairment beginning in July 1996. AR 703. The Court also ordered remand for reassessment of plaintiff's credibility, recalculation of her residual functional capacity, and reconsideration of "the application in its entirety." AR 703-04.

On February 7, 2005, an administrative hearing was held to correct the errors identified by the Court.[1] AR 707-18, 1016-54. On May 13, 2005, the ALJ issued a new decision in which he found that plaintiff became disabled as of March 12, 2003, but not before. AR 697-98. This decision is the Commissioner's final decision for purposes of judicial review. 20 C.F.R. § 404.984(d) (2006).

### III. JURISDICTION

The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) (2005).

### IV. STANDARD OF REVIEW

The Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error, or not supported by substantial evidence in the record as a whole. *See* 42 U.S.C. § 405(g); *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993); *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996). Substantial evidence is defined as more than a mere scintilla but less than a preponderance; "it is such relevant evidence as a

---

[1] On June 30, 2003, while plaintiff's case was pending in the District Court, plaintiff filed a third set of applications for SSI and DIB. AR 692, 763-66. The Social Security Administration apparently scheduled consideration of the 2001 applications and 2003 application for the same date. AR 709-13, 748-52. The ALJ's May 13, 2005, decision indicates that the 2003 applications would be addressed in a separate decision. AR 693.

REPORT AND RECOMMENDATION
PAGE -3

01 reasonable mind might accept as adequate to support a conclusion." *Magallanes v. Bowen*,
02 881 F.2d 747, 750 (9th Cir. 1989) (internal citations and quotations omitted). The ALJ is
03 responsible for determining credibility, resolving conflicts in medical testimony, and resolving
04 ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). Where the evidence is
05 susceptible to more than one rational interpretation, it is the Commissioner's conclusion that
06 must be upheld. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (internal citations
07 omitted).

08       The Court may direct an award of benefits where "the record has been fully developed
09 and further administrative proceedings would serve no useful purpose." *McCartey v.*
10 *Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen*, 80 F.3d at 1292). The Court
11 may find that this occurs when:

12-14     (1) the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if he considered the claimant's evidence.

15 *Id*. at 1076-77; *see also Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (noting that
16 erroneously rejected evidence may be credited when all three elements are met).

17                                 V. EVALUATING DISABILITY

18       As the claimant, Ms. Hawkes bears the burden of proving that she is disabled within
19 the meaning of the Social Security Act. *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999)
20 (internal citations omitted). Disability is defined as the "inability to engage in any substantial
21 gainful activity by reason of any medically determinable physical or mental impairment, which
22 can be expected to result in death, or which has lasted or can be expected to last for a
23 continuous period of not less than twelve months[.]" 42 U.S.C. §§ 423(d)(1)(A),
24 1382c(a)(3)(A). A claimant is disabled only if her impairments are of such severity that she is
25 not able to do her previous work, and cannot, considering her age, education, and work
26 experience, engage in any other substantial gainful activity existing in the national economy.

*See* 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The Social Security regulations set out a five-step sequential-evaluation process for determining whether a claimant is disabled within the meaning of the Social Security Act. *See* 20 C.F.R. §§ 404.1520, 416.920. At step one, the claimant must establish that she is not engaging in any substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). If the claimant establishes that she has not engaged in any substantial gainful activity, the Commissioner proceeds to step two. At step two, the claimant must establish that she has one or more medically-severe impairments, or combination of impairments, that limit her physical or mental ability to do basic work activities. If the claimant does not have such impairments, she is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant does have a severe impairment, the Commissioner moves to step three to determine whether the impairment meets or equals any of the listed impairments described in the regulations. 20 C.F.R. §§ 404.1520(d), 416.920(d). A claimant who meets or equals one of the listings for the required twelve-month-duration requirement is disabled. *Id.*

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). The Commissioner then uses the RFC to determine whether the claimant can still perform the physical and mental demands of her past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is not able to perform her past relevant work, the burden shifts to the Commissioner at step five to show that the claimant can perform some other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 416.920(g); *Tackett*, 180 F.3d at 1099, 1100. If the Commissioner finds the claimant is unable to perform other work, then the claimant is found disabled and benefits may be awarded.

REPORT AND RECOMMENDATION
PAGE -5

## VI.  DECISION BELOW

On May 13, 2005, the ALJ issued a decision finding:

1. The claimant meets the nondisability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(i) of the Social Security Act and is insured for benefits as of the established onset date.

2. The claimant has not engaged in substantial gainful activity since December 1, 1997.

3. The medical evidence establishes that the claimant has the following "severe" impairments: depression, anxiety, a heart impairment, and, diagnosed in March 2003, carpal tunnel syndrome.  Her asthma, diabetes, and complaints of aches and pains were not severe impairments within the meaning of the disability regulations (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant has no impairment that meets or equals the criteria of any impairment listed in Appendix 1, Subpart P, Regulations No. 4.

5. The claimant's assertions concerning her ability to work are credible.

6. The claimant has the residual functional capacity to lift and/or carry up to 20 pounds occasionally and up to 10 pounds frequently.  As of March 12, 2003, but not before, she is moderately limited in her ability to: understand and remember detailed instructions; carry out detailed instructions; maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; and interact appropriately with the general public.  As of March 2003, she had additional significant limitations from carpal tunnel syndrome.

7. The claimant is able to perform the requirements of her past relevant work until March 12, 2003, and was not disabled prior to that date. (20 CFR 404.1520(e) and 416.920(e)).

8. The claimant's residual functional capacity for the full range of light work is reduced by additional limitations.

9. On March 12, 2003, the claimant was a younger individual age 45-49.

10. The claimant has a high school education.

11. The claimant has an unskilled work background.

12. As of March 12, 2003, but not before, considering the claimant's additional limitations, she cannot make an adjustment to any work that exists in significant numbers in the national economy; a finding of disabled is therefore reached within the framework of medical-

             vocational rule 202.20 and based on the opinion of the vocational expert.

13.     The claimant has been under a disability, as defined in the Social Security Act, since March 12, 2003, but not before. (20 CFR §§ 404.1520(g) and 416.920(g)).

AR 697-98.

## VII. ISSUES ON APPEAL

Plaintiff raises the following issues:

1. Did the ALJ err by failing to properly apply the "special technique" (20 C.F.R. §§ 404.1420a, 416.920a) for evaluating mental impairments?;

2. Did the ALJ erroneously reject the medical opinions of Drs. Brinkman, Piro, Bartlett, and Parlatore?;

3. Did the ALJ err in determining that plaintiff was disabled only as of March 12, 2003? and;

4. Did the ALJ err in his analysis of plaintiff's credibility?

## VIII. DISCUSSION

The ALJ found that plaintiff was not disabled from her alleged onset date of December 1, 1997, through March 11, 2003. AR 695, 697-98. He found that plaintiff's assertions regarding her ability to work during this period were not credible, and that a variety of medical opinions offered during that period were "simply wrong." AR 694-95. The ALJ, however, determined that plaintiff subsequently experienced "significant deterioration." *Id*. Relying upon the testimony of a vocational expert ("VE"), he found that the cumulative effects of plaintiff's mental impairments, together with carpal tunnel syndrome, prevented her from performing her past relevant work. AR 696. Based upon an August 29, 2003, mental RFC examination and VE testimony, he then found that plaintiff would be precluded from other work as of March 12, 2003.[2] *Id*.

---

[2] March 12, 2003, is the date that plaintiff formally was diagnosed with carpal tunnel syndrome. AR 954.

REPORT AND RECOMMENDATION
PAGE -7

The decision to award benefits from March 12, 2003, forward is supported by substantial evidence and not contested by the parties. The remaining issue, however, is whether the ALJ's decision not to award benefits for the period of December 1, 1997, through March 11, 2003, was supported by substantial evidence and free from legal error. After carefully reviewing the ALJ's decision and the more than 1,000 pages of the record, the Court cannot find that the ALJ's decision only to award benefits as of March 12, 2003, satisfies this standard. The decision provided insufficient analysis of the lengthy medical record and cursory analysis of plaintiff's credibility.

    A.    <u>The ALJ's Analysis of the Medical Evidence Was Inadequate</u>.

The ALJ failed to provide specific and legitimate reasons for rejecting the opinions of examining Drs. Piro (Ph.D), Brinkman (Psy. D), Bartlett (Ph.D.), and Parlatore (M.D.)[3] These doctors performed numerous mental-status evaluations on plaintiff between July 2000 and August 2004. They offered substantially similar diagnoses of dysthmia, major depression, panic disorder with agoraphobia, and anxiety disorder. AR 359, 363, 427, 504, 513, 630, 681, 913, 917. These doctors also offered similar opinions that plaintiff suffered from marked to moderate limitations in a variety of cognitive and social areas. For instance, Dr. Piro assessed marked limitation in her ability to exercise judgment and make decisions, and in her ability to respond appropriately to, and tolerate the pressures and expectations of, a normal work setting. AR 360, 364, 505. He also found moderate limitations in her ability to

---

[3] Neither party explicitly states whether the opinions of these treating physicians were contradicted or uncontradicted. If they were uncontradicted, then the ALJ would be required to provide "clear and convincing" reasons for rejecting the opinions. Conversely, if they were contradicted, the ALJ must provide "specific and legitimate" reasons supported by substantial evidence in the record for rejecting them. *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995). Plaintiff appears to concede that these opinions were contradicted. *See* Dkt. Nos. 23, 26. Because the doctors' diagnoses and opinions regarding plaintiff's functional limitations differ, the Court treats the opinions as contradicted. Thus, the ALJ could reject the opinions of Drs. Piro, Brinkman, Bartlett, and Parlatore only by providing specific and legitimate reasons that are supported by the record.

understand, remember, and follow complex instructions, her ability to learn new tasks, her ability to relate appropriately to co-workers and supervisors, and her ability to interact with the public. *Id.* He later found additional moderate limitations in her ability to maintain proper hygiene and appearance and to maintain proper behavior. AR 364, 505. In December 2002, Dr. Piro completed a set of interrogatories in which he opined that plaintiff met the listing for affective disorders.[4] AR 634-37.

Dr. Brinkman offered substantially similar evaluations of plaintiff between February 24, 2003, and August 18, 2004.[5] AR 679-82, 829-32, 912-19. In February 2005, Dr. Brinkman completed a set of interrogatories in which he opined that plaintiff met the listings for affective and anxiety disorders. AR 993-98. Similarly, in February 2002, Dr. Bartlett diagnosed major depression and panic disorder and concluded that plaintiff was "not employable." AR 512-13. Dr. Parlatore offered similar opinions. AR 424-27.

The ALJ discredited all of these opinions because he believed they were "not consistent with the other medical evidence of record and [were] not persuasive." AR 694. The ALJ, however, did not identify any specific medical opinion to support this assertion and it does not appear to be accurate. *Id.* To the contrary, in addition to the above doctors, several other examining doctors diagnosed plaintiff with similar impairments and found similar functional limitations. AR 348-55, 358-65, 424-30, 503-14, 544-47, 629-32, 679-82, 829-32, 912-19. For instance, Dr. Vanderwielen examined plaintiff in January 2000 and diagnosed her with dysthmia, and assigned moderate to marked limitations in virtually every area

---

[4] The interrogatories also addressed whether plaintiff met the listing for anxiety disorders, but the responses do not appear to indicate that she did. AR 634-37.

[5] He diagnosed plaintiff with "major depression, recurrent, moderate generalized anxiety disorder" and possible dsythmic disorder. AR 681. He later diagnosed major depression and panic disorder with agoraphobia. AR 630, 913, 917. Dr. Brinkman also found moderate limits in the same categories as Dr. Piro, including moderate limits on her ability to make judgments and tolerate the pressures and expectations of a normal work setting. AR 680, 831, 914, 918.

REPORT AND RECOMMENDATION
PAGE -9

identified by Drs. Piro, Brinkman, Bartlett, and Parlatore. AR 348-51. He offered a similar opinion in March 2000. AR 352-55. Dr. Johnston found similar moderate limitations in a May 2001 examination. AR 428-44. Dr. Hakeman also diagnosed plaintiff in September 2002 with dysthmia, anxiety, and agoraphobia and found similar limitations. AR 544-47. The ALJ did not explicitly address any of these opinions.

Moreover, the ALJ gave no reason to support his conclusion that the August 9, 2003, opinion of Dr. Collingwood, upon which he relied to find plaintiff disabled, was reliable, whereas the other examining opinions discussed above were not. Indeed, Dr. Collingwood's diagnoses and functional limitations were materially similar to the other examining opinions discussed above. AR 867-70. Additionally, her opinion, like those of Drs. Piro, Brinkman, and others were rendered on standardized forms, which the ALJ noted only when discrediting the latter opinions. AR 694. The ALJ also appears to have rejected these opinions because he believed the marked limitations in various cognitive and social areas were inconsistent with plaintiff's daily activities. AR 694. He did not, however, explain why these activities were not inconsistent with Dr. Collingwood's opinion, nor any of the other examining opinions he failed to analyze.

There very well may be specific and legitimate reasons for preferring some of the medical opinions in this record over others, but the ALJ's decision fails to set forth those reasons. As a result, the Court cannot be certain that the hypothetical presented to the VE was accurate and, in turn, that his testimony was reliable. Although the Court is sympathetic to the ALJ's task in this voluminous case, the decision cannot be affirmed in its current form. Upon remand, the ALJ should reevaluate each of the medical opinions and reapply the applicable steps of the sequential-evaluation process. If, after doing so, he cannot determine the accuracy of plaintiff's onset date, the ALJ should call a medical expert to assist in that task.

REPORT AND RECOMMENDATION
PAGE -10

B.  The ALJ Should Apply the "Special Technique" for Evaluating Mental Impairments.

Plaintiff argues that the ALJ erred by failing to apply the special technique for evaluating mental impairments properly. Dkt. No. 23 at 16. She argues that he failed to rate the degree of impairment caused by her depression and anxiety and as a result, his subsequent analysis was flawed. The Commissioner has not responded to this argument.

The Social Security Regulations require ALJs to follow a "special technique at each level of the administrative review process" when they evaluate mental impairments. 20 C.F.R. §§ 404.1520a, 416.920a. The special technique requires ALJs first to determine whether plaintiff has a medically determinable mental impairment and then rate the degree of functional limitation that results from that impairment.[6] *Id*. at (b). The ALJ then must apply the sequential-evaluation process, as appropriate. *Id*. at (d). The ALJ must document application of the special technique in his decision, including "a specific finding as to the degree of limitation in each of the functional areas[.]" *Id*. at (e).

At step two, the ALJ found that plaintiff suffered from the severe mental impairments of depression and anxiety. AR 693, 697. Hence, the ALJ satisfied the first prong of the special technique. 20 C.F.R. §§ 404.1520a(b)(1), 416.920a(b)(1). The ALJ, however, did not evaluate the degree of functional limitation resulting from these mental impairments before proceeding with the sequential-evaluation process. Rather, after finding these impairments, the decision immediately skips to step three of the five-step sequential-evaluation process and finds that plaintiff's severe impairments do not satisfy a listing. AR 694.

The first mention of any rating of plaintiff's functional abilities is in the context of the RFC analysis, where the ALJ found that plaintiff "is mild to perhaps occasionally moderately limited in her ability to: understand and remember detailed instructions; carry

---

[6]The ALJ specifically must rate plaintiff's ability to perform: (1) activities of daily living; (2) social functioning; (3) concentration persistence, or pace; and (4) episodes of decompensation. *Id*. at (c).

REPORT AND RECOMMENDATION
PAGE -11

out detailed instructions; maintain attention and concentration for extended periods; perform activities within a schedule; maintain regular attendance; and be punctual within customary tolerances; and interact appropriately with the general public." AR 694. He failed to rate the severity of plaintiff's functional limitations prior to that point. No formal findings regarding plaintiff's mental functional limitations were made. *See* AR 697-98. Thus, the ALJ did not follow the special technique prescribed by the regulations. These omissions are not harmless technicalities; they require remand for proper consideration. *See Gutierrez v. Apfel*, 199 F.3d 1048 (9th Cir. 2000) (remanding where ALJ failed to append psychiatric review technique form to decision where evidence of mental impairment existed).[7]

      C.     <u>The ALJ's Credibility Analysis Was Deficient</u>.

Once a claimant produces medical evidence of an underlying impairment, the ALJ may not discredit the claimant's testimony as to the severity of symptoms solely because the symptoms are unsupported by objective medical evidence. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (internal citations omitted). Absent affirmative evidence showing that the claimant is malingering, the ALJ must provide clear and convincing reasons for rejecting the claimant's testimony. *Id*. "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." The ALJ may consider ordinary techniques of credibility evaluation, including a reputation for truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities, work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains. *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997) (internal citations omitted).

---

[7]Gutierrez addressed the application of § 404.1520a in effect until September 2000. This section required an ALJ to complete and append to a decision a Psychiatric Review Technique Form. Although the present version of this section permits an ALJ to document his findings in his written decision rather than on a form, *Gutierrez* still stands for the proposition that the requirements of § 404.1520a are not mere technicalities.

The ALJ found that plaintiff's allegations regarding her impairments were not credible prior to March 12, 2003.[8] AR 695. Although the ALJ concluded that plaintiff was not credible prior to that date, he gave no reason as to why she may have been credible as of March 12, 2003, but not so prior to that date, and no reason is readily apparent to the Court. Moreover, the analysis of plaintiff's credibility that the ALJ did provide was general and conclusory. AR 695. It gave no specific citations to the record and failed to identify the portions of the record that undercut particular portions of her credibility. The credibility analysis does not satisfy the Court's June 18, 2004, order of remand and falls short of the legal standard required by *Reddick*. On remand, the ALJ should reassess plaintiff's credibility.

## IX.  CONCLUSION

For the reasons discussed above, this case should be reversed and remanded for further administrative proceedings not inconsistent with this report and recommendation. In particular, the ALJ should reassess the medical evidence and plaintiff's credibility to determine whether plaintiff is entitled to an award of benefits prior to March 12, 2003. A proposed order accompanies this report and recommendation.

DATED this 14th day of June, 2006.

*James P. Donohue*

JAMES P. DONOHUE
United States Magistrate Judge

---

[8] His formal findings, however, state that plaintiff's "assertions concerning her credibility to work are credible." AR 697.

REPORT AND RECOMMENDATION
PAGE -13